UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHINETHA GLENN, ESTATE OF TAKARA GLENN HIGHTOWER, GH1 MINOR, GH2 MINOR, GH3 MINOR, GH4 MINOR, GH5 MINOR, DANIELLE RUFFIN, SCOTT EDWARD SCOTT, <br><br>  Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br>  Defendant. | § § § § § § § § § § § § § § § §  Civil Action No. 4:24-cv-05140 |

### DEFENDANT'S MOTION TO DISMISS

Dated: March 21, 2025

Respectfully submitted,

NICHOLAS J. GANJEI
UNITED STATES ATTORNEY

 By: */s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney
Southern District No. 3257790
Texas Bar No. 24106434
Ariel N. Wiley
Assistant United States Attorney
Texas Bar No. 24093366
Federal ID No. 2554283
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9600
Fax: (713) 718-3303
E-mail: myra.siddiqui@usdoj.gov
Email: ariel.wiley@usdoj.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................... iii

FACTUAL BACKGROUND ........................................................................................................... 1

STANDARD OF REVIEW .............................................................................................................. 2

ARGUMENT .................................................................................................................................... 3

    A.    The Discretionary Function Exception bars Plaintiffs' claims. ......................................... 3

        i.      Standard. .................................................................................................................. 3

        ii.     The applicable policies. .......................................................................................... 4

        iii.    Defendant was never under a mandatory duty for which they did not comply. ............. 8

    B.    Plaintiffs fail to state a claim, because the Navy performed its mandatory duties. ........... 10

    C.    Plaintiffs fail to state a claim for negligent undertaking. .................................................. 10

    D.    Plaintiff fails to state a claim regarding the Navy's communications to Mr. or Mrs. Hightower. ................................................................................................................ 12

    E.    Plaintiffs cannot bring a claim for Negligent Supervision or Negligent Training under the FTCA. ................................................................................................................... 13

CONCLUSION............................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

Cases

*Alfonso v. United States*,
  752 F.3d 622 (5th Cir. 2014).................................................................................................. 2

*Anderson v. United States*,
  No. 4:18-CV-871-O, 2022 WL 800729 (N.D. Tex. Mar. 16, 2022).......................................... 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 2

*Barron v. United States*,
  111 F.4th 667 (5th Cir. 2024)................................................................................................ 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 2

*Bodin v. Vagshenian*,
  462 F.3d 481 (5th Cir. 2006)................................................................................................. 14

*Colonial Sav. Ass'n v. Taylor*,
  544 S.W.2d 116 (Tex. 1976).................................................................................................. 11

*Dorsey v. Relf*,
  559 F. App'x 401 (5th Cir. 2014) ........................................................................................... 7

*F.D.I.C. v. Meyer*,
  510 U.S. 471 (1994) ................................................................................................................ 3

*Fisher v. United States*,
  No. CV 19-2448, 2019 WL 4168828 (E.D. La. Sept. 3, 2019) .............................................. 7

*Krim v. pcOrder.com, Inc.*,
  402 F.3d 489 (5th Cir. 2005).................................................................................................. 2

*Joiner v. United States*,
  955 F.3d 399 (5th Cir. 2020).................................................................................................. 3

*Lane v. Pena*,
  518 U.S. 187 (1996) ................................................................................................................ 3

*Life Partners Inc. v. United States*,
  650 F.3d 1026 (5th Cir. 2011)........................................................................................ 12, 13

*M.D.C.G. v. United States*,
   956 F.3d 762 (5th Cir. 2020) .................................................................................. 13, 14

*Matthews v. United States*,
   No. CIV. 07-00030, 2011 WL 3471140 (D. Guam Aug. 5, 2011) ..................... 4, 5, 6

*Morris v. United States*
   2024 WL 4140634 (E.D. Tex. Aug. 6, 2024) ........................................................ 12, 13

*St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*,
   556 F.3d 307 (5th Cir. 2009) .......................................................................................... 2

*United States v. Gaubert*,
   499 U.S. 315 (1991) ........................................................................................................ 4

*United States v. King*,
   395 U.S. 1 (1969) ........................................................................................................... 3

*United States v. Mitchell*,
   445 U.S. 535 (1980) ....................................................................................................... 3

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*,
   467 U.S. 797 (1984) ....................................................................................................... 3

*United States v. Shearer*,
   473 U.S. 52 (1985) ....................................................................................................... 14

*Vickers v. United States*,
   228 F.3d 944 (9th Cir. 2000) ....................................................................................... 14

*Walding v. United States*,
   955 F. Supp. 2d 759 (W.D. Tex 2013) ...................................................................... 13

*Williamson v. U.S. Dep't of Agric.*,
   815 F.2d 368 (5th Cir. 1987) ....................................................................................... 12

Statutes

28 U.S.C. § 1346(b) ............................................................................................................ 3
28 U.S.C. § 2680(a) ............................................................................................................ 3
28 U.S.C. § 2680(h) .......................................................................................................... 12

Rules

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 2
Fed. R. Civ. P. 12(b)(1) ................................................................................................. 1, 2

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant United States of America moves to dismiss this case because the discretionary function exception and misrepresentation exception bars Plaintiffs' FTCA claims, such that this Court lacks jurisdiction over Plaintiff's claims. In addition, Plaintiffs fail to plausibly plead claims for negligence, negligent undertaking, or negligent failure to train or supervise.

## FACTUAL BACKGROUND

Plaintiffs allege that Ms. Hightower first contacted an individual at the Family Advocacy Program ("FAP") regarding her concerns about her husband on September 14, 2022. ECF No. 1, ¶ 5.17. The same day, the Command FAP contacted Commander Tyler and relayed this information to him. *Id.*, ¶ 5.28. That day, a no contact order was issued to Mr. Hightower, prohibiting contact between him and his wife. *Id.*, ¶ 5.34. Moreover, when Mr. Hightower returned to the family home to retrieve some of his belongings on September 20, Ms. Hightower was "asked to leave the house for a few hours that day." *Id.*, ¶ 5.35. Plaintiffs allege that it was during this time that Mr. Hightower retrieved his personal firearm from the home. *Id.*, ¶ 5.35.

On the day she heard this concern from Ms. Hightower, the Command FAP attempted to contact Commander Tyler after 8pm, and he returned her call the next day. *Id.*, ¶¶ 5.37-38. The same day that Commander Tyler returned her call and received the concerns that Mr. Hightower had taken his personal firearm the day prior, a military protective order was issued. *Id.*, ¶ 5.39. According to Ms. Higher, the military protective order contained an incorrect address. In response, the Navy redrafted and signed a new military protective order the next day, on September 22, and attempted to have Mr. Hightower sign the amended MPO. *Id.*, ¶¶ 5.43-45.

That day, Mr. Hightower went to the family home when armed Naval Criminal Investigative Service ("NCIS") agents were interviewing Ms. Hightower. *Id.*, ¶ 5.50. He exchanged gunfire with the NCIS agents, one of whom was shot in the upper shoulder and lower

abdomen. *Id*. The NCIS agents shot Mr. Hightower in the stomach, and he fled. *Id*. He went to his mother's apartment, where he was shot and killed by local law enforcement. *Id*., ¶¶ 5.51-52. This incident occurred on September 22. *Id*., ¶ 5.45, 50. Thus, eight days passed between Ms. Hightower alerting the Navy of her concerns and the incident at issue.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss an action when it lacks subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quotations omitted). Once a Rule 12(b)(1) motion is filed, the party asserting jurisdiction bears the burden of proof. *Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014) (quotations omitted). In reviewing such a motion, a court may rely on any of the following to decide the matter: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) (quotations omitted).

Further, a court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Unsupported factual allegations and legal conclusions, however, receive no such deference. *Id*. at 679. A complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

# ARGUMENT

### A.   The Discretionary Function Exception bars Plaintiffs' claims.

#### i.   Standard.

The federal government cannot be sued unless Congress has waived sovereign immunity by statute. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). A waiver of sovereign immunity cannot be implied; it must be unequivocally expressed. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. King*, 395 U.S. 1, 4 (1969). Accordingly, to bring the United States or one of its agencies into court, a statute must expressly waive the sovereign immunity of the United States. *Lane v. Pena*, 518 U.S. 187, 192 (1996). A waiver of sovereign immunity is "strictly construed, in terms of its scope, in favor of the sovereign." *Id*.

While the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), "authorizes suits against the United States for damages, . . . . Congress was careful to except from the Act's broad waiver of immunity several important classes of tort claims." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 807 (1984). Among these are claims covered by the discretionary function exception ("DFE").

The DFE bars any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Congress created this exception to "prevent[s] judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *S.A. Empresa*, 467 U.S. at 814. At the pleading stage, Plaintiffs have the burden of establishing jurisdiction "by alleging a claim that is facially outside of the discretionary function exception." *Joiner v. United States*, 955 F.3d 399, 404 (5th Cir. 2020) (citation and quotation omitted).

The Supreme Court has devised a two-step test for applying the DFE. *United States v. Gaubert*, 499 U.S. 315, 328–34 (1991). First, a court considers whether the challenged conduct is "discretionary in nature," i.e., acts that involve "an element of judgment or choice." *Id*. at 322 (citation and quotation omitted). If there is a statute, regulation, or policy that dictates a "specific, nondiscretionary function or duty that prescribe[s] a specific course of action for an agency or employee," the DFE does not apply. *Id*. (quotation omitted). Second, a court considers whether the challenged conduct "is of the kind that the discretionary function exception was designed to shield." *Id*.

The Supreme Court has emphasized that the DFE "is not confined to the policy or planning level" and extends "to the actions of Government agents" taken "in the course of day-to-day activities." *Gaubert*, 499 U.S. at 323, 325, 334. The focus "is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation," but rather on "the nature of the actions taken and whether they are susceptible to policy analysis." *Id*. at 325.

ii.  **The applicable policies.**

Regarding the first step of the DFE analysis, operation of the military's FAP is susceptible to policy analysis. *Matthews v. United States*, No. CIV. 07-00030, 2011 WL 3471140, at *4 (D. Guam Aug. 5, 2011), aff'd, 586 F. App'x 366 (9th Cir. 2014) (dismissing claims under the DFE because "the precise operation of the FAP calls for the exercise of discretionary decisions by Government employees."). This is demonstrated by the non-mandatory, discretionary language used in the provisions cited in the complaint. The events that give rise to this cause of action occurred in September 2022. The applicable DoD Instruction is attached as Exhibit 1 and was effective from December 15, 2021, to May 16, 2023. Ex. 1. Plaintiffs misstate most of the

4

applicable DoD instructions by citing to an out-of-date version of the DoD instruction. Below is the instruction cited in Plaintiffs' complaint, and the accurate applicable instruction:

| DoD Instruction Number | Plaintiffs' Complaint | DoD Instruction 6400.06 Effective December 15, 2021 – May 16, 2023 (Ex. 1) |
|---|---|---|
| 6400.06 Instruction: 3.5(c)(4) | Commanders shall "[e]nsure that safe housing has been secured for the victim **as needed**." ECF No. 1, ¶ 5.8 (citing DoD Instruction 6400.06, 6.1.1.9, August 21, 2007, Incorporating Change 4, May 26, 2017) (emphasis added). | Commanders: Initial Response and Assessment: "Commanders will secure safe housing for victim **as needed**." Ex. 1 at 38 (emphasis added) |
| 6400.06 Instruction: 3.5(c)(16) | Commanders shall "[i]n consultation with FAP staff, ensure **a safety plan** is prepared and in place and monitor the victim's safety." ECF No. 1, ¶ 5.8 (citing DoD Instruction 6400.06 at 6.1.1.14) (emphasis added). | "Monitor an active duty alleged abuser as they complete FAP treatment or service plan recommendations. If the alleged abuser refuses to participate or cooperate in treatment, contact FAP to coordinate risk monitoring and additional actions, **as appropriate**, to support the victim's safety plan." Ex. 1 at 40. (emphasis added). |
| 6400.06 Instruction: 3.5(b)(4) | Commanders shall "[e]nsure that the alleged military abusers are held accountable for their conduct through **appropriate** disposition under the Uniform Code of Military Justice ("UCMJ")." ECF No. 1, ¶ 5.8 (citing DoD Instruction 6400.06 at 6.1.1.1.; OPNAVINST 1752.2C at Ch. 3, 2.a) (emphasis added). | Commanders will "Coordinate with the servicing legal office to ensure Service members found to have committed acts of domestic abuse are held **appropriately accountable**." Ex. 1 at 37. (emphasis added) |
| 6400.06 Instruction: 3.3(b)(6) | FAP Victim Advocates **shall** "[a]ssess the situation for imminent danger of life-threatening physical harm to the victim or another person." ECF No. 1, ¶ 5.11 (citing DoD Instruction 6400.06 at 6.4.2.6) (emphasis added). | FAP clinical providers will: "**Assess the situation** to determine whether there is imminent danger of life-threatening physical harm to the victim or another person, including but not limited to |

5

| | | |
|---|---|---|
| | | risk of grievous harm or ongoing sexual abuse of children in the home." Ex. 1 at 27 (emphasis added). |

Plaintiffs also cited to non-DoD instructions. They read as follows:

- On DD Form 2873, a commanding officer **can** order the surrender of government weapons and/or personal firearms. ECF No. 1, ¶ 5.10 (citing DD Form 2873, Nos. 7(i)(j)) (space for commanding officer to initial "appropriate portions").

- If imminent danger of life-threatening physical harm exists, even if the victim has elected the restricted reporting option, command or law enforcement will still be notified if, **based on the assessment**, there is a good faith belief that there is a serious and imminent threat to the health or safety of the victim or another person.[1]

- The Navy requires all FAPs to "**[a]ssess** for imminent danger of life-threatening physical harm to the victim or another person and create a safety plan, **as needed**." *Id.*, ¶ 5.11 (citing OPNAVINST 1752.2C at Ch. 9, 3.c) (emphasis added).

- The "High Risk for Violence-Coordinated Community Response (HRVCCR) team must be activated when, **in the judgment of the FAR** [Family Advocacy Representative], there is a threat of immediate and serious harm to Service members, family members, or unmarried intimate partners." *Id.*, ¶ 5.12 (citing OPNAVINST 1752.2C at Ch. 14 1.a) (emphasis added).

As to the last bullet, because the HRVCCR team is activated only at the discretion of the FAR, any corresponding responsibilities of the team would only be triggered after the FAR has exercised this discretion to active or not activate the team. *See id.*, ¶ 5.12 (citing OPNAVINST 1752.2C at Ch. 14 1.b) ("The HRVCCR team provides 'rapid assistance, case coordination including ongoing safety planning, risk assessments and case management. The team must monitor

---

[1] Because Plaintiffs do not cite any regulation for this statement, Defendant disputes that such regulation exists. Even if it did, the discretionary language in this section would bar Plaintiffs' claims.

6

safety and risk reduction actions put in place as a result of a high risk situation. Meetings must be scheduled **as needed** to ensure risks are reduced and client care has been appropriately coordinated and resolved.'") (emphasis added). Because these provisions provide non-mandatory responsibilities that allow the Government to exercise discretion, any claims challenging the exercise of that discretion are barred by the DFE.

Moreover, while some of the above provisions require an assessment, the cited provisions notably do not provide a time frame or manner in which the assessment or responding actions must be carried out. *See Dorsey v. Relf*, 559 F. App'x 401, 403 (5th Cir. 2014) (where BOP policy required officers "to assess the situation and determine whether the medical condition is sufficiently severe to justify" interrupting headcount, the challenged decision not to interrupt headcount involved "an element of judgment or choice" that was "the kind that the discretionary function exception was designed to shield"). This absence of a mandatory directive to perform the duties in a particular way or within a particular time frame deprives this Court of jurisdiction over these claims. *See Fisher v. United States*, No. CV 19-2448, 2019 WL 4168828, at *4 (E.D. La. Sept. 3, 2019) (dismissing for lack of jurisdiction because DFE applied, since policy listed responsibilities to create sign program but did not outline specific course of conduct required to address trail hazards and thus "reserve[d] discretion . . . to create the program and decide when and how signs will be used"); *Anderson v. United States*, No. 4:18-CV-871-O, 2022 WL 800729, at *6 (N.D. Tex. Mar. 16, 2022) (dismissing under DFE because no language in regulations or policy statement mandated when to place inmate in administrative detention for his safety, such that the timing of the placement was left to warden's discretion).

### iii. Defendant was never under a mandatory duty for which they did not comply.

To the extent Plaintiffs argue that the Navy was under a mandatory duty to assess the danger, there is no dispute that FAP assessed the situation for danger and alerted command. Plaintiffs' allege that the Command FAP and Commander Tyler maintained regular contact, speaking either the same day Ms. Hightower raised a concern or the very next day, in the instance in which the Command FAP contacted Commander Tyler after 8:30pm. ECF No. 1, ¶¶ 5.17, 27-28, 37. During the eight days between receiving Ms. Hightower's first complaint and the shooting incident, the Navy issued a no contact order which led to Mr. Hightower leaving the family home the same day that Ms. Hightower spoke to FAP, alerted Ms. Hightower to the one time that Mr. Hightower returned home to retrieve his belongs, issued a military protective order, and took steps to correct the error in the MPO the next day. *Id.*, ¶¶ 5.34, 35, 40, 44-45. Because these decisions are left to the discretion of the responsible individuals, the DFE bars any related claims.

Similarly, other provisions cited in the complaint merely require Commanders to have a safety plan, but the details of that plan are left to the discretion of the Commanders. Here, a no contact order was immediately issued and Mr. Hightower had left the family home. *Id.*, ¶ 5.34. When he did return, the Navy made sure that Takara was not present. *Id.*, ¶ 5.35.

Moreover, the Navy did issue a military protective order, satisfying the only mandatory obligation as to the MPO. There is no timeline or specific manner required in the below provisions. Here, the Navy issued a no contact order the same day that Takara called the Family Advocacy Program. *Id.*, ¶ 5.34. Seven days after her complaint, the Navy issued a military protective order and attempted to correct the MPO the following day. *Id.*, ¶¶ 5.40, 5.43-5.45. As demonstrated below, the remaining directives on the MPO contain discretionary language, such that any claim related to the MPO is barred by the DFE.

| DoD Instruction Number | Plaintiffs' Complaint | DoD Instruction 6400.06 Effective December 15, 2021 – May 16, 2023 (Ex. 1) |
|---|---|---|
| 6400.06 Instruction: 3.5(c)(5) | Commanders shall "[e]nsure protection of all persons alleged or known to be at risk from domestic abuse by issuing and enforcing an **appropriate** military protection order (MPO) that is coordinated with those civilian authorities that enforce the protection orders issued by civilian courts." ECF No. 1, ¶ 5.9 (citing DoD Instruction 6400.06 at 6.1.1.22) (emphasis added). | Commanders: Initial Response and Assessment: "Ensure protection of all persons alleged or known to be at risk from domestic abuse by issuing and enforcing **an appropriate** MPO." Ex. 1 at 38 (emphasis added) |
| 6400.06 Instruction: 3.5(d)(2) | Commanders "[s]hall issue and monitor compliance with an MPO **when necessary** to safeguard a victim, and maintain good order and discipline while a victim has time to pursue a protection order through a civilian court, or to support an existing CPO." ECF No. 1, ¶ 5.9 (citing DoD 6400.06 at 6.1.2.1) (emphasis added). | "Issue and check compliance with an MPO, **when necessary**, to safeguard a victim, quell a disturbance, and maintain good order and discipline. The MPO will provide the victim time to pursue a protection order through a civilian court (should they choose to do so) or should support any existing CPO." Ex. 1 at 40. (emphasis added). |
| 6400.06 Instruction: 3.5(d)(2)(e) | Commanders "[s]hall tailor the terms of the MPO **to meet the specific needs** of an individual victim." ECF No. 1, ¶ 5.9 (citing DoD 6400.06 at 6.1.2.4) (emphasis added). | Commanders will "Tailor the MPO's terms to **meet the specific needs** of an individual victim." Ex. 1 at 40. (emphasis added) |

Because Plaintiffs have not identified a non-discretionary duty and invoke provisions that allow the Government discretion and the exercise of judgment, Plaintiffs' claims are barred by the DFE, and this Court lacks jurisdiction over all of Plaintiffs' claims.

9

**B.      Plaintiffs fail to state a claim, because the Navy performed its mandatory duties.**

Plaintiffs point to two provisions that are non-discretionary. First, Plaintiff note that "FAP VAs must immediately report any increase in victimization patterns to the FAR [family advocacy representative], security or the command. ECF No. 1, ¶ 5.11 (citing OPNAVINST 1752.2C at Ch. 9, 3.c). The Navy did so.

During the eight days between Ms. Hightower raising a concern and the shooting incident, Command FAP and Commander Tyler spoke either the same day Ms. Hightower raised a concern or the very next day, in the instance in which the Command FAP contacted Commander Tyler after 8:30pm. ECF No. 1, ¶¶ 5.17, 27-28, 37. Thus, the Command FAP immediately reported any increase in victimization patterns to the command.

Second, Plaintiffs cite DoD Instruction 6400.06 at 6.1.1.22, which requires an MPO to be issued. *See id*., ¶ 5.9. As discussed above, the Navy did issue an MPO, satisfying this mandatory duty. Therefore, Plaintiffs fail to state a claim in connection with these two alleged duties.

Nowhere do Plaintiffs provide any basis for the long list of duties alleged in their negligence cause of action, such as the duty to confiscate the firearm, the duty to supervise or restrict Mr. Hightower's access to the home, the duty to keep confidential the investigation or interview, or the duty to restrict Mr. Hightower's movements, a duty to secure the home, or the existence of any "proper procedure" on which Navy personnel were not trained. *See* ECF No. 1, ¶ 6.2. And the above regulations do not create any such duty. Therefore, Plaintiffs fail to state a negligence claim.

**C.      Plaintiffs fail to state a claim for negligent undertaking.**

Plaintiffs similarly fail to state a plausible negligent undertaking claim. To state a claim for negligent undertaking, Plaintiffs must allege that: "(1) the defendant undertook to perform services

that it knew or should have known were necessary for the protection of others; (2) the defendant failed to exercise reasonable care in performing those services; and (3) the plaintiff either relied upon the defendant's performance or the defendant's performance increased the plaintiff's risk of harm." *Barron v. United States*, 111 F.4th 667, 672–73 (5th Cir. 2024), certified question accepted (Aug. 9, 2024), certified question dismissed (Sept. 20, 2024) (citing *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119–20 (Tex. 1976)).

At no point did the Navy undertake to "remove weapons from the home" or take the other safety precautions suggested by Plaintiffs. Even taking Plaintiffs' allegations as true, at most, Commander Tyler informed FAP that he "would make some calls because he was 'unsure about removal of gun/weapon procedures.'" ECF No. 1, ¶ 5.32. He made no statement that he would remove the weapons. Similarly, even if Command FAP Castillo told Commander Tyler that "she 'would [remove the gun] if they couldn't'", that statement is not a voluntary promise to remove the weapons. *See id.*, ¶ 5.33. It is at most a statement conditioned on Commander Tyler's determination that the Navy couldn't remove the gun, and Plaintiffs do not allege that Command had determined whether they could remove the guns or not in the eight days that passed between Ms. Hightower's complaint and the shooting incident.

As to the other duties that the Navy "voluntarily undertook," Plaintiffs' conclusory allegations that Ms. Hightower asked the Navy to do something in no way constitutes a voluntary undertaking by the Navy that would create a duty under Texas law. Like the negligence claim, Plaintiffs provide no basis for the duties alleged in their negligent undertaking claim, such as the duty to confiscate the firearm, the duty to supervise or restrict Mr. Hightower's access to the home, the duty to keep the investigation or interview confidential, or the duty to restrict Mr. Hightower's movements, a duty to secure the home, or the existence of any "proper procedure" on which Navy

11

personnel were not trained. *See* ECF No. 1, ¶ 6.2. Plaintiffs therefore fail to plausibly plead a negligent undertaking claim.

> **D.  Plaintiff fails to state a claim regarding the Navy's communications to Mr. or Mrs. Hightower.**

In the alternative, the misrepresentation exception to the FTCA applies to this case and bars jurisdiction over Plaintiffs' claims regarding disclosure of the interview occurring at the family home. A "failure of the government to use due care in conveying information is not actionable under the misrepresentation exception." *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 377 (5th Cir. 1987); 28 U.S.C. § 2680(h) ("The provisions of this chapter and section 1346(b) of this title shall not apply to [a]ny claim arising out of . . . misrepresentation . . . ."). The inquiry into whether the misrepresentation exception applies is two steps.

First, the court determines whether "the chain of causation from the alleged negligence to the injury depends upon a misrepresentation by a government agent." *Life Partners Inc. v. United States*, 650 F.3d 1026, 1031–32 (5th Cir. 2011). The court "consider[s] whether 'the focal point of the claim is negligence in the communication of (or failure to communicate) information or negligence in the performance of an operational task, with misrepresentation being merely collateral to such performance.'" *Id.* (citation omitted). Second, the court considers "whether Congress has nonetheless waived sovereign immunity independently of the FTCA." *Id.* at 1032. In other words, the plaintiff must "allege any applicable waiver of sovereign immunity outside the FTCA." *Id.*

This case is similar to *Morris v. United States*, where the Court held that the misrepresentation exception barred the plaintiff's claims related to injuries she suffered after her ex-boyfriend was discharged from a residential reentry facility. No. 1:22-CV-00227, 2024 WL 4140634, at *1 (E.D. Tex. Aug. 6, 2024). The plaintiff brought an FTCA case, alleging that when

12

she informed the probation officer that her ex-boyfriend was threatening her, the probation officer "told [her] that [he] would get a warrant immediately, make sure [she] was not in danger, and ensure that [she] was safe to stay in her home." *Id*. The plaintiff alleged that as a result, she stayed home with her children instead of hiding, and her ex-boyfriend later broke into her home and attacked her. *Id*. In concluding that the misrepresentation exception barred the plaintiff's FTCA claim, the court found that the first prong regarding chain of causation was satisfied, since the victim's "essential grievance is that, if [the probation officer] had told [the plaintiff] that [her ex-boyfriend] remained a danger and [the probation officer] was not protecting [the plaintiff] at her home, then [the plaintiff] could and would have gone somewhere else to stay out of harm's way." *Id*. at *4. Because the allegations concerned "negligent communication," the challenged act was "based on misrepresentation, a claim that is barred by Section 2680(h)." *Id*.

Similar to the plaintiff in *Morris*, here, Plaintiffs allege that the Government negligently communicated information, to the harm of Ms. Hightower. As to the second prong, Plaintiffs do not "allege any applicable waiver of sovereign immunity outside the FTCA." *See Life Partners*, 650 F.3d at 1032. Thus, Plaintiffs' claim related to the Navy's communications are barred by the misrepresentation exception, and this Court lacks jurisdiction over those claims.

**E.     Plaintiffs cannot bring a claim for Negligent Supervision or Negligent Training under the FTCA.**

In addition to the reasons argued above, Plaintiffs specifically cannot bring a claim for negligent supervision or training under the FTCA. "[F]ederal employees' supervision of subordinates involves the kind of judgment that the discretionary function exception was meant to protect." *M.D.C.G. v. United States*, 956 F.3d 762, 772 (5th Cir. 2020) (citations omitted). *Walding v. United States*, 955 F. Supp. 2d 759, 782 (W.D. Tex 2013) (noting that courts have "generally held that decisions relating to hiring, training, and supervision of employees

usually involve policy judgment of the type Congress intended the discretionary function exception to shield.") (citations omitted); *see also Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (collecting cases from 1st, 8th, 9th, 10th, and D.C. Circuits).

Negligent supervision is equally barred. The Fifth Circuit has found that negligent supervision claims are barred for a lack of jurisdiction under the discretionary function exception. *Bodin v. Vagshenian*, 462 F.3d 481, 488 (5th Cir. 2006) ("[T]he FTCA does not waive sovereign immunity for negligent supervision claims.") (citing *United States v. Shearer*, 473 U.S. 52, 55 (1985)); *M.D.C.G.*, 956 F.3d at 771 (DFE barred negligent supervision claims where there was no mandatory policy that either directed or proscribed a course of action to be taken by supervisors, and it was plaintiff's "burden to convince [the court] otherwise"). Any claims Plaintiffs have regarding negligent supervision or training are thus barred for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, the United States requests that the Court dismiss Plaintiffs' claims in their entirety.

Dated: March 21, 2025

Respectfully submitted,

NICHOLAS J. GANJEI
UNITED STATES ATTORNEY

By: */s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney
Southern District No. 3257790
Texas Bar No. 24106434
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9600
Fax: (713) 718-3303
E-mail: myra.siddiqui@usdoj.gov

By: /s/ *Ariel N. Wiley*
Ariel N. Wiley
Assistant United States Attorney
Texas Bar No. 24093366
Federal ID No. 2554283
1000 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 567-9000
Facsimile: (713) 718-3303
Email: ariel.wiley@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on March 21, 2025, the foregoing was filed and served on counsel of record through the Court's CM/ECF system.

*/s/ Myra Siddiqui*
Myra Siddiqui
Assistant United States Attorney

15